UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| VALENTIJN PUNT, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 22-1218 (RC) |
| | : | | |
| v. | : | Re Document No.: | 3 |
| | : | | |
| UNITED STATES CITIZENSHIP & | : | | |
| IMMIGRATION SERVICES, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

Plaintiff Valentijn Punt ("Plaintiff" or "Punt") brings this suit against the United States Citizenship and Immigration Services ("USCIS"), Ur Jaddou in his official capacity as Director of USCIS, Alejandro Mayorkas in his official capacity as Secretary of the Department of Homeland Security, and Alissa Emmel in her official capacity as Chief of the Immigrant Investor Program Office of USCIS (collectively, "Defendants"). Plaintiff seeks relief under the Mandamus Act (28 U.S.C. § 1361), the Administrative Procedure Act ("APA") (5 U.S.C. § 706(1)), and the Declaratory Judgment Act (28 U.S.C. § 2201) based on allegations that Defendants have unreasonably delayed adjudication of his I-526 immigration petition. On July 11, 2022, Defendants moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Punt filed an opposition on July 26, 2022 and Defendants filed a reply on August 1, 2022. For the reasons set forth below, the Court grants Defendants' motion to dismiss.

## II.  FACTUAL BACKGROUND

Those wishing to enter the United States may apply for one of two categories of visas: a nonimmigrant visa (to visit the United States on a temporary basis for tourism, business, study, etc.), or an immigrant visa (to live permanently in the United States).  *See Khamrabaeva v. Blinken*, No. 22-cv-1219, 2022 WL 4446387 at *1 (D.D.C. Sept. 24, 2022).  Valentijn Punt, a citizen of the Netherlands, sought an immigrant visa through the EB-5 program.  *See* Compl. ¶ 1, ECF No. 1.  The EB-5 program allots "immigrant investor visas" to those who contribute to "employment creation" by investing at least $1,000,000 (since raised to $1,050,000) in a new commercial enterprise that will create ten or more jobs, or $500,000 (since raised to $800,000) in a "targeted employment area."  *See* 8 U.S.C § 1153(b)(5)(A)(i)–(ii), (b)(5)(C)(i)–(ii); *see Palakuru v. Renaud*, 521 F. Supp. 3d 46, 47 (D.D.C. 2021).  Those seeking to obtain permanent residency through the EB-5 program must first file with USCIS an I-526 petition containing evidence of a qualifying investment.  "Once the petition is processed and a visa becomes available—which may take years—the immigrant advances to 'conditional' lawful permanent resident status."  *Mirror Lake Village, LLC v. Wolf*, 971 F.3d 373, 375 (D.C. Cir. 2020) (citing 8 U.S.C. § 1186b(a)).  After two years, the petitioner may seek removal of the "conditional" basis of the lawful permanent resident status by submitting evidence of compliance with the statutory requirements.  *See id.*

Congress also created the Pilot Immigration Program, known as the Regional Center Program, as an "alternative path to an EB-5 visa."  *Da Costa v. Imm. Investor Program Off.*, No. 22-cv-1576, 2022 WL 17173186, at *1 (D.D.C. Nov. 16, 2022).  "Under that program, immigrant investors may satisfy the EB-5 employment-creation requirement by creating jobs indirectly through a minimum investment into a designated regional center."  *Id.* (cleaned up).

The Regional Center Program's statutory authorization expired on July 1, 2021, at which point USCIS suspended adjudication of pending I-526 petitions and most Regional Center applications.[1]  See Defs.' Mot. to Dismiss ("Defs.' Mot.") at 7–8, ECF No. 3.  About nine months later, on March 15, 2022, the President signed an appropriations bill into law that included a standalone bill reauthorizing the Regional Center Program.  See Consol. Appropriations Act, 2022, Pub. L. No. 117-103, Div. BB, § 103, 136 Stat. 1070, 1070–1100 (2022); Defs.' Mot. at 8.  USCIS thereafter resumed processing of I-526 petitions related to the Regional Center Program.  Defs.' Mot. at 8.

On November 20, 2019, Punt filed an I-526 petition and provided evidence of his qualifying $500,000 investment to finance the Fouquet's Hotel Tribeca Project.  Compl. ¶ 1.  New Empire EB-5 Regional Center, LLC ("New Empire"), which sponsors Punt's investment project, had been pre-approved for participation in the Regional Center Program as a designated regional center.  Id. ¶ 30.  At the time he initiated this action on May 2, 2022, Punt's I-526 petition had been pending for approximately twenty-nine months, including the approximately nine months during which the Regional Center Program's authorization had lapsed.  Id. ¶ 4.

---

[1] Punt makes a brief argument that the Regional Center Program never lapsed, based on his preferred reading of the statute that created it, Pub. L. No. 102-395 § 610(a).  See Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 2–3, ECF No. 4.  But he makes no attempt to address the decisions by courts in this District convincingly finding otherwise in the face of similar arguments.  See, e.g., Da Costa, 2022 WL 17173186, at *5–7 (rejecting argument that the Regional Center Program never lapsed and listing cases finding the same).  The Court agrees with the Da Costa court that "inspection of § 610(b)" and "subsequent statutory history" confirm that the Regional Center Program was "envisioned . . . as a 'pilot'" that was "drafted to expire after five years," id. at *5–6, such that the program did in fact lapse between July 1, 2021 and March 15, 2022, Defs.' Mot. at 7–8.

### III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "state a claim upon which relief can be granted" to survive a motion to dismiss.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff's factual allegations, therefore, "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

Punt invokes the Court's mandamus jurisdiction under 28 U.S.C. § 1361 to compel USCIS to adjudicate his I-526 petition.  Compl. ¶ 78.  Courts may issue writs of mandamus to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "[C]onsideration of any mandamus petition starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act."  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (internal quotation marks and citations omitted).  The central question, then, is "whether the agency's delay is so egregious as to warrant mandamus."  *Id.* (citing *Telecomms. Res. & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 79 (D.C. Cir. 1984)).

"[E]ssentially the same" standards govern actions to compel delayed action through mandamus as actions for unreasonable delay under the APA. *Vietnam Veterans of Am. v. Shineseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). Where an agency has a legal duty to act,[2] the D.C. Circuit has identified six factors to analyze for claims of unreasonable delay:

(1) the time agencies take to make decisions must be governed by a "rule of reason;"

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order that agency action is "unreasonably delayed."

*TRAC*, 750 F.2d at 80 (cleaned up). If the "record contains enough facts to evaluate the *TRAC* factors," courts apply the *TRAC* factors at the motion to dismiss phase of cases involving claims of unreasonable delay. *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376, 2021 WL 4191958, at *4 (D.D.C. Sept. 15, 2021) (citation omitted).

## IV. ANALYSIS

Punt does not contest that the record contains sufficient facts to assess his unreasonable delay claim without further discovery, so the Court proceeds to analyze the *TRAC* factors. The D.C. Circuit has explained that the first *TRAC* factor is the "most important," *Core Commc'ns*, 531 F.3d at 855, and also has emphasized the importance of the fourth *TRAC* factor where an

---

[2] Defendants do not contest that such a duty exists here.

5

agency is facing "competing priorities," *Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1100–01 (D.C. Cir. 2003) (citation omitted). Indeed, the D.C. Circuit has explained that, even where "all the other factors considered in *TRAC* favored it," relief is inappropriate where "a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Id.* (cleaned up). Accordingly, the Court begins its evaluation with these dispositive factors, and finds that neither favors relief.

### A. Reasonableness

The first[3] *TRAC* factor requires that the agency's process be governed by a "rule of reason." *TRAC*, 750 F.2d at 80 (citation omitted). Defendants explain that USCIS's approach to adjudication of I-526 petitions prioritizes "petitions for individuals from countries where visas are currently available or soon to be available." Defs.' Mot. at 12. Specifically, "USCIS manages I-526 Petition inventory through workflows that factor in whether the visa is, or soon will be, available and whether the underlying project in which the petitioner has purportedly invested has previously been reviewed." *Id.* As such, "workflows are generally managed in first-in, first-out order." *Id.* Punt argues that this only represents a "theoretical[]" system, but in practice "there's no rhyme or reason to their approach." Pl.'s Opp'n at 5. But the only factual allegation Punt makes to support this argument is that he is "a citizen of the Netherlands" and therefore "is an individual from an underrepresented country where visas are currently available." *Id.* Punt's spare allegations do nothing to call into doubt the reasonableness of USCIS's first-in, first-out approach. Accordingly, the Court joins several other courts in this

---

[3] Courts generally consider the first and second *TRAC* factors together, as both analyze whether there is "sufficient rhyme and reason to explain the Government's response time." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 166 (D.D.C. 2021) (cleaned up and citation omitted); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). The analysis herein follows this practice.

District in finding that USCIS has established an "identifiable rationale" guiding consideration of I-526 petitions. *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014); *see, e.g.*, *Da Costa*, 2022 WL17173186, at *8 (finding that USCIS provided a "solid rule of reason for processing I-526 petitions" and listing numerous cases finding the same).

Punt next argues that Congress intended USCIS to process I-526 petitions within 180 days, so USCIS's approach yielding longer wait times is unreasonable under the second *TRAC* factor. Pl.'s Opp'n at 5–6. Specifically, Punt argues that the 180-day deadline is imposed through 8 U.S.C. § 1571(b) and the EB-5 Reform and Integrity Act of 2021. *Id.* Section 1571(b), which is the "preamble to legislation providing for the institution of measures to reduce the backlog in processing of immigration benefits by the now-defunct Immigration and Naturalization Service," *Arab v. Blinken*, No. 21-cv-1852, 2022 WL 1184551, at *7 (D.D.C. Apr. 21, 2022), states the "sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application," § 1571(b). Similarly, Section 6(b) of the EB-5 Reform and Integrity Act of 2021 "requires that new fees be set for the processing of EB-5 petitions at levels to recover the costs of adjudicating those petitions, based on 'the goal of completing adjudications, on average, not later than . . . 180 days after receiving an application . . . .'" *Bega v. Jaddou*, 22-cv-2171, 2022 WL 17403123, at *6 (D.D.C. Dec. 2, 2022) (citing EB-5 Reform and Integrity Act of 2021, H.R. 2901, 117th Cong. § 6(b)(2) (2021)).

However, Plaintiff concedes that "these timelines are not mandatory." Pl.'s Opp'n at 7. Reliance on a "precatory" and "non-binding" sense of Congress, *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 528 n.26 (D.C. Cir. 2015), is therefore unpersuasive, especially in light of agencies' "wide discretion in the area of immigration processing," *Skalka v. Kelly*, 246 F. Supp. 3d 147,

153–54 (D.D.C. 2017). "Absent any specific legislative deadline, courts typically turn to case law as a guide." *Bega*, 2022 WL 17403123, at *7 (cleaned up and citation omitted). While no "bright lines" have been drawn, "'[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.'" *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (quoting *Yavari v. Pompeo*, No. 19-cv-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)). While the Court sympathizes with Punt's frustration, it cannot find that his wait of twenty months, or even twenty-nine months if the period during which the Regional Center Program lapsed is included, is an unreasonable delay as a matter of law. *See, e.g.*, *Bega*, 2022 WL 17403123, at *7 ("Plaintiffs' wait of between thirty-two and forty months for adjudication of their I-526 petitions is therefore not unreasonable as a matter of law, especially when USCIS was unable to act on plaintiffs' petitions for nine of those months while the Regional Center Program lacked authorization."); *Da Costa*, 2022 WL 17173186, at *10 (same for wait of twenty-seven months); *Mokkapati v. Mayorkas*, No. 21-cv-1195, 2022 WL 2817840, at *6 (D.D.C. July 19, 2022) (same for wait of thirty-two months); *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592, 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (same for wait of forty-two months); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (same for wait of twenty-nine months); *Meyou v. U.S. Dep't of State*, No. 21-cv-2806, 2022 WL 1556344, at *3 (D.D.C. May 17, 2022) (same for wait of twenty-nine months). Accordingly, the Court finds that USCIS is guided by a rule of reason and that Punt's wait since November 2019 is not unreasonable as a matter of law.

### B. Competing Priorities

The fourth factor asks courts to consider "the effect of expediting delayed action on agency activities of a higher or competing priority." *See TRAC*, 750 F.2d at 80. As explained above, courts "will not compel an agency action if doing so would simply move Plaintiff to the head of the line at the expense of others waiting for the same action." *Brzezinski*, 2021 WL 4191985, at *5. This is precisely the case here.

Punt argues that compelling USCIS to adjudicate his petition would have no effect on the agency's process and would instead be "in line with USCIS' goal of prioritizing applicants from underrepresented countries." Pl.'s Opp'n at 7. He argues that he is "not requesting to jump the line in front of all I-526 applicants" because he is from an underrepresented country and his project has already been reviewed and approved by USCIS. *Id.* at 8. Defendants argue that Punt is "improperly requesting to jump the line ahead of all I-526 petitioners with a visa available, a reviewed project, and who filed their petitions before him." Defs.' Reply Supp. Defs.' Mot. Dismiss ("Defs.' Reply") at 9, ECF No. 5. The Court agrees with Defendants. Defendants state that the processing time for I-526 Petitions ranged from 25 months (median) to 58.5 months (93rd percentile) at the time the Complaint was filed. *See* Defs.' Mot. at 13. Punt's arguments, therefore, do not "account for the possibility"—indeed, the near certainty in this case—"that many others in his situation . . . filed their petitions before he did." *Telles v. Mayorkas*, No. 21-cv-395, 2022 WL 2713349, at *4 (D.D.C. July 13, 2022) (quoting *Palakuru*, 521 F. Supp. 3d at 51) (finding that a forty-two month delay for I-526 processing was not unreasonable). Punt's conclusory assertions do not address the reality that a judicial order putting Punt at the front of the line for visa adjudication would "simply move[] all others back one space and produce[] no net gain," *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100; *see also Mokkapati*, 2022

9

WL 2817840, at *7 ("[M]any other individuals are in similarly trying circumstances, and defendants, too, face their own challenges in determining how best to deploy scarce resources during an unprecedented global pandemic and while they work to reimplement the Regional Center Program under the recently enacted EB-5 Reform and Integrity Act of 2022."). Further, Punt does not allege that USCIS treated him differently from anyone else similarly situated. Accordingly, the Court agrees with other courts in this District that have found that the fourth *TRAC* factor weighs against relief in substantially similar situations. *See, e.g.*, *Da Costa*, 2022 WL 17173186, at *10 ("Were this Court to grant them relief, it would thus be directing the agency to divert resources away from other petitions of competing priority and bump Plaintiffs to the front of the line."); *Bega*, 2022 WL 17403123, at *7–8; *Mokkapati*, 2022 WL 2817840, at *6–7.

### C. Remaining *TRAC* Factors

Although the Court's analysis of the first and fourth *TRAC* factors is dispositive, *see Meyou*, 2022 WL 1556344, at *4 (noting that "[t]he fourth factor, like the first factor, 'carries the greatest weight in many cases'" (citation omitted)), the other factors do not clearly point in Punt's favor either.

The third and fifth *TRAC* factors require consideration of the delay's negative effects on the "human health and welfare" interests at stake and "the nature and extent of the interests prejudiced" by the delay. *TRAC*, 750 F.2d at 80. Punt contends that he is increasingly at "risk that the project will not have available funds to repay them if his I-526 petition is denied" and that his ability to reside in the United States, become employed in the United States, or become a U.S. citizen may become unachievable. Compl. ¶¶ 36–39. Defendants respond that Punt's

"alleged harms are the 'sort of prejudice . . . inherent in the [adjudication] process.'" Defs.' Mot. at 19 (quoting *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 54 (S.D.N.Y. 2020)).

The Court finds that the primarily personal and economic hardships Punt alleges are not of the severity or kind that other courts have found tilt the third and fifth factors in favor of similarly situated plaintiffs. *Compare Desai v. U.S. Citizenship and Immigr. Servs.*, No. 20-cv-1005, 2021 WL 1110737, at *7 (D.D.C. March 22, 2021) (stating that the inability to supervise investment in the United States or plan for the future were "purely economic" harms insufficient to tilt the third and fifth *TRAC* factors for the plaintiff in claim of unreasonable delay of EB-5 petition), *and Telles*, 2022 WL 2713349, at *4 (noting that the plaintiff's "expense, stress, and uncertainty" from inability to start new job in New York until receiving EB-5 visa were "far from the allegations of health and welfare harm found in other cases" (internal quotation marks and citations omitted)), *with Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (finding that the prolonged separation of spouses due to delay in adjudicating I-130 petition is "undeniably significant"), *and Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-cv-1262, 2021 WL 5998385, at *8 (D.D.C. Dec. 20, 2021) (stating that diminished quality of life due to mental health disorders caused or exacerbated by delay of I-30 adjudication weigh factors "at least somewhat in Plaintiff's favor"). However understandable Punt's desire to see prompt adjudication of his petition, the hardships he asserts do not implicate the kinds of serious health and welfare interests to which the third and fifth *TRAC* factors are primarily addressed.

The sixth *TRAC* factor also does not affect the Court's conclusion that Punt has failed to state a claim of unreasonable delay. While courts "must determine whether the agency has acted in bad faith in delaying action," *Gona v. U.S. Citizenship & Immigration Servs.*, 20-cv-3680, 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021), Punt has not alleged specific facts sufficient to

11

permit a reasonable inference of bad faith here. Accordingly, "the lack of plausible allegations of impropriety . . . does not alter the Court's analysis" one way or the other. *Thakker v. Renaud*, No. 20-cv-1133, 2021 WL 1092269, at *8 (D.D.C. Mar. 22, 2021) (citing *Palakuru*, 521 F. Supp. 3d at 53).

Taken together, Punt's failure to establish that USCIS has acted unreasonably, to explain why his petition should be considered ahead of those similarly situated, to assert sufficiently weighty health and welfare interests, or to establish bad faith by USCIS collectively compel a finding that he has failed to state a claim for unreasonable delay.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 3) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: January 11, 2023                                                                    RUDOLPH CONTRERAS
                                                                                                              United States District Judge